```
          IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF OHIO
                    EASTERN DIVISION
```

James W. Patterson, Jr.,

    Plaintiff,

    v.                        Case No. 2:04-cr-512

Donald Rumsfeld, Secretary,
Department of Defense,

    Defendant.

## OPINION AND ORDER

This is an employment discrimination action filed by plaintiff James W. Patterson, Jr., against Donald Rumsfeld in his official capacity as Secretary of the United States Department of Defense. Plaintiff is employed at the Defense Supply Center, Columbus ("DSCC"), a facility operated by the Defense Logistics Agency ("DLA"), an agency within the Department of Defense that procures supplies for the armed services. Plaintiff asserts claims of discrimination based on race, color and sex under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §2000e-16, and claims of age discrimination under the Age Discrimination in Employment Act ("ADEA"), as amended, 29 U.S.C. §633a.[1]

This matter is before the court on the defendant's motion for

---

[1] In his complaint, plaintiff also refers to federal and Ohio common law and Ohio Revised Code §4112.02 as providing bases for his claims. However, since plaintiff is a federal employee, Title VII and the ADEA provide the exclusive remedies for his discrimination claims. See, e.g., Brown v. GSA, 425 U.S. 820, 835 (1976)(Title VII is the exclusive remedy for federal employees for types of discrimination prohibited by Title VII); Tapia-Tapia v. Potter, 322 F.3d 742, 745 (1st Cir. 2003)(ADEA provides exclusive remedy for age discrimination in federal employment); Davis v. Runyon, 142 F.3d 433 (table), 1998 WL 96558 at *5 (6th Cir. 1998)(Title VII is exclusive remedy for federal employee; claim under §4112.02(A) properly dismissed). Therefore, to the extent that plaintiff's claims are based on federal common law or Ohio law, they are hereby dismissed.

summary judgment.  The procedure for granting summary judgment is found in Fed. R. Civ. P. 56(c), which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). However, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986).

The Sixth Circuit Court of Appeals has recognized that Liberty Lobby, Celotex and Matsushita effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. Street v. J. C. Bradford & Co., 886 F.2d 1472, 1476 (6th Cir. 1989).  The court in Street identified a number of important principles applicable in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. Id. at 1479. In addition, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact

will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Id. (quoting Liberty Lobby, 477 U.S. at 257).  The nonmoving party must adduce more than a scintilla of evidence to overcome the summary judgment motion. Id.  It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'" Id. (quoting Matsushita, 475 U.S. at 586).  Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact."  Id.  That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.

Plaintiff has failed to respond to the defendant's motion for summary judgment and counsel for plaintiff has informed the court that no response will be filed.  The court finds that plaintiff has abandoned his claims.  However, the court will proceed to address the merits of defendant's motion.

I. History of the Case

During the relevant time period, plaintiff was employed in the Maritime Directorate of DSCC.  Plaintiff initially contacted the Equal Employment Opportunity ("EEO") office on March 1, 2001, and filed a formal discrimination complaint on June 5, 2001. Plaintiff, an African-American male born on December 17, 1952, alleged that he was discriminated against on the basis of his race, color, sex and age because: (1) he was put on a Performance Improvement Plan by Deputy Director Pam Cooper in February of 2000; (2) he was transferred from his position as an Emergency Supply

Operations Center ("ESOC") supervisor to the non-supervisory positions of Weapons System Point of Contact ("WSPOC") and BSM Liaison, and was replaced by a younger Caucasian female; (3) he was not permitted to keep his phone extension when he was transferred to the new WSPOC position in January of 2001; and (4) his supervisor sent him an e-mail in February of 2001 inquiring as to his whereabouts when he had been assigned to attend a meeting.

A contract investigator conducted an investigation of plaintiff's complaint and prepared a Report of Investigation. A hearing was held by the Equal Employment Opportunity Commission ("EEOC") on April 23 and 24, 2003. A transcript of this hearing has been filed as an exhibit to defendant's motion for summary judgment. On September 23, 2003, EEOC Administrative Law Judge Pamela Von Borcke issued a decision finding that plaintiff was not discriminated against based on his race, color, sex, or age. Plaintiff appealed this ruling to the EEOC, and on March 15, 2004, the EEOC issued a final decision upholding the decision of the administrative law judge. Plaintiff filed his complaint in the instant action on June 14, 2004.

II. Applicable Standards

Plaintiff has asserted discrimination claims under Title VII and the ADEA. In order to establish employment discrimination under these provisions, plaintiff must either present direct evidence of discrimination or introduce circumstantial evidence that would allow an inference of discriminatory treatment. Anthony v. BTR Automotive Sealing Systems, Inc., 339 F.3d 506, 514 (6th Cir. 2003); Wexler v. White's Fine Furniture, 317 F.3d 564, 570 (6th Cir. 2003). Since plaintiff has presented no direct evidence of

4

discrimination, the burden-shifting approach under <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973), applies in this case. <u>Anthony</u>, 339 F.3d at 514-15. Plaintiff bears the initial burden of presenting a prima facie case of discrimination. <u>Id</u>. at 515. If plaintiff does so, then defendant must articulate some legitimate, nondiscriminatory reason for the challenged action. <u>Id</u>. If defendant meets this burden, then plaintiff must prove that defendant's reasons are a pretext for discrimination. <u>Id</u>. The ultimate burden of proof that the defendant intentionally discriminated against the plaintiff remains at all times on the plaintiff. <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 507 (1993).

Plaintiff's discrimination claims are based on alleged disparate treatment. In order to prove a claim of disparate treatment, plaintiff must show: (1) that he is a member of a protected class; (2) that he was qualified for the job; (3) that he suffered an adverse employment decision; and (4) that similarly situated non-minority employees were treated more favorably. <u>Clayton v. Meijer, Inc.</u>, 281 F.3d 605, 610 (6th Cir. 2002).

An adverse employment action is defined as a "materially adverse change in the terms and conditions of [plaintiff's] employment." <u>Hollins v. Atlantic Co.</u>, 188 F.3d 652, 662 (6th Cir. 1999). Examples of adverse employment actions include firing, failing to promote, reassignment with significantly different responsibilities, a material loss of benefits, suspensions, and other indices unique to a particular situation. <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742, 761 (1998); <u>Smith v. City of Salem, Ohio</u>, 378 F.3d 566, 575-76 (6th Cir. 2004).

5

Employment actions that are de minimis are not actionable. Bowman v. Shawnee State Univ., 220 F.3d 456, 462 (6th Cir. 2000). Events such as a bruised ego, mere inconvenience, or an alteration of job responsibilities do not constitute an adverse employment action. Smith, 378 F.3d at 575.

Reassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions. Kocsis v. Multi-Care Mgmt. Inc., 97 F.3d 876, 885 (6th Cir. 1996); Yates v. Avco Corp., 819 F.2d 630, 638 (6th Cir. 1987). However, a reassignment may be an adverse employment action if it constitutes a demotion evidenced by "a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." Kocsis, 97 F.3d at 886.

Plaintiff must also show that similarly situated employees not within the protected class were treated more favorably. To be similarly situated, exact correlation is not required, but the plaintiff and the employee with whom the plaintiff seeks to compare himself must be similar in "all of the relevant aspects." Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998)(quoting Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 802 (6th Cir. 1994)). The non-minority employees must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them. Ercegovich, 154 F.3d at 352.

III. Plaintiff's Claims

A. Performance Improvement Plan

Plaintiff contends that he was discriminated against when he was put on a Performance Improvement Plan ("PIP") by Deputy Director Pam Cooper in February of 2000. Ms. Cooper was plaintiff's third level supervisor. Plaintiff was placed on the PIP in February, 2000, but he did not complain about this to the EEO office until March of 2001. Defendant correctly argues that this claim is untimely under 29 C.F.R. §1614.105(a)(1), which requires the employee to initiate pre-complaint or informal EEO counseling with forty-five days of the personnel action believed to be discriminatory. However, since the EEOC entertained this claim on the merits, the court will address it.

Plaintiff was placed on a PIP by Ms. Cooper due to two incidents witnessed by Ms. Cooper. The first of these involved an occasion on which plaintiff, in the presence of other workers, informed Ms. Cooper that he intended to defy his superiors' instructions to complete Issue Priority Group 1 orders. These orders are of the highest priority because they can result in mission failure if not filled immediately. Ms. Cooper testified at the administrative hearing that plaintiff was a part of the management team, and that if he objected to how the customer support obligations were being addressed, he should have voiced his concerns through the chain of command rather than discussing the matter with her in front of the work force.

The second incident which prompted the PIP occurred when plaintiff was informed that he was being transferred to the ESOC supervisor position. Ms. Cooper testified that plaintiff stated,

7

"I'm not going to work with them." When she asked to whom he was referring, plaintiff gave the example of an admiral who requested an anchor that he believed was urgently needed, which, according to plaintiff, was a ridiculous request.

Defendant first argues that the PIP did not constitute an adverse employment action. There is evidence that the goal of a PIP is to make someone successful. Ms. Cooper testified at the administrative hearing that she chose to place plaintiff on a PIP rather than giving him an unfavorable performance appraisal which would have been placed in plaintiff's personnel file and may have impacted upon his applications for other positions. In contrast, the PIP was temporary, and plaintiff had the same salary, benefits, and duties while on the PIP. The evidence fails to show that the PIP in this case constituted an adverse employment action.

Defendant also argues that plaintiff has failed to meet his burden of producing evidence on the fourth element of his prima facie case, that other similarly situated non-minority employees were treated more favorably. Ms. Cooper testified that she had placed four other employees on PIPs, including a white female, a black female, a white male and a minority male. Plaintiff has produced no evidence to show that similarly situated non-minority employees were not placed on PIPs for similar conduct.

Defendant has also produced legitimate, nondiscriminatory reasons for the decision to place plaintiff on a PIP. Ms. Cooper testified that plaintiff was placed on the PIP based on his statements, which, in Ms. Cooper's view, expressed a lack of support or disregard for the customer and the mission of the directorate. She stated that plaintiff was placed on the PIP to

8

ensure that he understood that the customer was the heart of the mission and what his responsibilities were as a leader, and that he would be successful in executing his responsibilities. She denied that plaintiff's race, color, sex or age played any role in her decision to place him on a PIP. Plaintiff has produced no evidence to discredit these reasons or to show that they were a pretext for discrimination. Defendant is entitled to summary judgment on the claims relating to the PIP.

B. Transfer to WSPOC Position

Plaintiff also alleges that he was discriminated against due to his transfer from his position as ESOC supervisor to a non-supervisory WSPOC position and his replacement by a younger Caucasian female. The record reveals that during January and February of 2001, plaintiff was transferred from his supervisory position at ESOC to a non-supervisory position as a WSPOC. Plaintiff's supervisor, Lieutenant Commander Carr, recommended that plaintiff be transferred. Captain Kim Chojnowski, the director of the DSCC Maritime Directorate, made the ultimate decision to move plaintiff to one of three new WSPOC positions within the Maritime Directorate which were created to deal with the anticipated effects of a new Business System Modernization ("BSM") program being installed throughout the agency beginning in 2001. Plaintiff complained about this assignment and requested reassignment to a position in the new BSM group. Since the BSM group was not in the Maritime Directorate, Captain Chojnowski did not have the authority to place plaintiff in BSM, and was unable to find an opening in BSM for plaintiff. Captain Chojnowski then created a BSM liason position in the Maritime Directorate and appointed plaintiff to

9

this position. However, plaintiff was not happy with this position, and the agency subsequently offered plaintiff a position as a Customer Account Specialist, a position which features higher wage grades.

Defendant argues that plaintiff has not shown that his transfer from the ESOC position constituted an adverse job action. After the transfer, plaintiff remained in the same pay grade, and had the same rate of pay and benefits. There is no evidence that the transfer involved a loss of prestige or diminished job responsibilities. In fact, there is evidence that the transfer was a positive career move. Captain Chojnowski testified that it was better in terms of a career path to be associated with BSM. Plaintiff has not produced evidence sufficient to show that his transfer constituted an adverse job action.

The defendant also argues that plaintiff has not shown that other similarly situated employees were treated more favorably. The evidence shows that a Caucasian male and a Caucasian female were also selected along with plaintiff to fill the newly created WSPOC openings, and that all three were moved from supervisory to non-supervisory positions. Plaintiff has failed to show that he could prove this element of his prima facie case.

Defendant has also articulated nondiscriminatory reasons for plaintiff's transfer. Lieutenant Commander Carr requested plaintiff's transfer because of plaintiff's surly temperament and his regular expression of negative opinions at staff meetings concerning the policies of the agency leadership. Lieutenant Commander Carr also testified that plaintiff had frequent unscheduled absences. For example, in the first twenty-two weeks

plaintiff was supervised by Lieutenant Commander Carr, plaintiff called in eleven times on a Monday or Friday to say he would be late or that he was not coming in. There is also evidence that Lieutenant Commander Carr had difficulties communicating with plaintiff, since both men had outspoken personalities.

Captain Chojnowski made the final decision to transfer plaintiff. He considered the request for plaintiff's transfer made by Lieutenant Commander Carr. He also was advised by Ms. Cooper that plaintiff possessed the analytic ability and experience necessary for the WSPOC position. There is also evidence that it was the previous practice of the agency to transfer employees out of the ESOC supervisory positions after a year due to the stressful nature of those positions. Plaintiff himself alleged in his complaint that the ESOC supervisory position was highly stressful. Complaint, ¶14. Plaintiff's replacement, a Caucasian female, was chosen because she had previous experience as a supervisor and fit the need for technical expertise at ESOC.

Plaintiff has pointed to no evidence sufficient to create a genuine issue of material fact as to the issue of whether the stated reasons for his transfer were a pretext for discrimination. Defendant is entitled to summary judgment on plaintiff's transfer claim.

C. Denial of Permission to Keep Telephone Extension

Plaintiff also claims that he was discriminated against when he was not permitted to keep his phone extension when he was transferred to the new position of WSPOC in January of 2001. Plaintiff claims that he had been permitted to keep his phone extension on previous moves. However, his supervisor, Lieutenant

11

Commander Ronald Carr, testified that he was unaware of this practice, and that he felt that ESOC positions should retain the same phone numbers due to the emergency nature of the center.

Defendant correctly states that the refusal to allow plaintiff to take his phone extension with him did not arise to the level of an material adverse employment action.  Defendant also points to evidence that other non-minority employees who were transferred at the same time as plaintiff were not permitted by Lieutenant Commander Carr to keep their phone extensions.  Plaintiff has failed to produce evidence that other employees outside the protected classes were permitted by Lieutenant Commander Carr to keep their phone extensions.  Thus, plaintiff has failed to show that he could produce evidence sufficient to satisfy the elements of his prima facie case.

Defendant has also articulated a nondiscriminatory reason for the decision, and that reason has not been shown to be false or a pretext for discrimination.  Defendant is entitled to summary judgment on this claim.

D. Supervisor E-mail

Plaintiff contends that he was discriminated against when Lieutenant Commander Carr sent him an e-mail or e-mails in February of 2001 concerning his whereabouts when he had been assigned to attend a meeting.  On the occasion in question, plaintiff was assigned to attend a Procurement Management Review.  Lieutenant Commander Carr had been previously informed about this assignment, but he had forgotten about it at the time he sent plaintiff the e-mail.  Lieutenant Commander Carr testified that he inquired about plaintiff's whereabouts due to the fact that plaintiff had a

history of frequent and unscheduled absences. When plaintiff explained that he had been attending the meeting, Lieutenant Commander Carr apologized.

Defendant correctly notes that the fact that plaintiff's superior sent him an e-mail inquiring as to his whereabouts does not constitute a materially adverse job action. It is also insufficient to support a claim for discriminatory harassment. A claim for harassment requires a showing that the harassment created a hostile work environment. <u>Williams v. General Motors Corp.</u>, 187 F.3d 553, 560-61 (6th Cir. 1999). The harassment must be so severe or pervasive that it alters the conditions of the plaintiff's employment and creates an abusive working environment. <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21 (1993). There is no evidence that the e-mail in question was motivated by plaintiff's race, color, sex or age. Lieutenant Commander Carr offered a nondiscriminatory reason for the e-mail which has not been refuted by plaintiff. He also apologized for sending the e-mail. This single incident is insufficient to support a claim for harassment. Defendant is entitled to summary judgment on this claim.

<u>E. Additional Claims</u>

Plaintiff also alleges in the complaint in this case that: (1) in the fall of 1999, following his heart attack, he was removed as supervisor of the post award team and replaced by a white female (Complaint ¶13); (2) in January of 2000, he was assigned to the position of ESOC supervisor, a highly stressful position, inconsistent with his doctor's instructions (Complaint ¶14); and (3) on July 3, 2001, he received a memorandum of appreciation issued from Director William A. Cunningham, when the standard

13

operating procedure is a public reading of the award at the call of the director (Complaint ¶21).  These claims were not raised in plaintiff's administrative complaint before the EEOC.

Federal employees who allege that they have been victims of discrimination under Title VII must exhaust their administrative remedies.  Dixon v. Ashcroft, 392 F.3d 212, 217 (6th Cir. 2004); Benford v. Frank, 943 F.2d 609, 612 (6th Cir. 1991).  The judicial complaint must be limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination. Weigel v. Baptist Hosp. of East Tennessee, 302 F.3d 367, 380 (6th Cir. 2002).  The additional matters referred to in plaintiff's complaint were not included in his EEOC complaint, were not investigated by the EEOC, and were not issues which could reasonably be expected to grow out of the claims of discrimination made in plaintiff's administrative complaint. Plaintiff has failed to exhaust his administrative remedies in regard to these additional claims, and they are not properly before this court.

A federal employee alleging age discrimination may either pursue his administrative remedies prior to filing a court action, see 29 U.S.C. §633a(b) and (c), or present the merits of the claim to a federal court in the first instance.  See 29 U.S.C. §622a(d). Stevens v. Dep't of Treasury, 500 U.S. 1, 5-6 (1991).  If the employee elects to pursue administrative remedies, he must initiate contact with a counselor within forty-five days of the effective date of the action.  29 C.F.R. §1614.105(a)(1).  If no administrative complaint has been filed, the employee must still give at least thirty days notice to the EEOC of his intent to file a civil action, and that notice must also be filed within one

14

hundred and eighty days after the alleged unlawful practice occurred.  29 U.S.C. §633a(d).  In this case, plaintiff elected to pursue his administrative remedies, but did not include the above matters in his administrative complaint.  The instant action was also commenced years after the one hundred and eighty-day window for filing a direct civil action expired.  The court concludes that the additional claims listed above are barred and untimely under the ADEA.

Since the claims contained in paragraphs 13, 14 and 21 of the complaint are not properly before the court, they are dismissed.

IV. Conclusion

The court finds that no genuine issue of fact has been shown to exist in regard to plaintiff's claims of discrimination, and defendant is entitled to summary judgment on those claims.  The defendant's motion for summary judgment is granted.  The clerk shall enter judgment in favor of defendant on plaintiff's complaint.

Date: March 23, 2006                      s\James L. Graham
                                      James L. Graham
                                      United States District Judge